<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SAMRA PLASTIC AND
RECONSTRUCTIVE SURGERY,

        Plaintiff,

        v.

CIGNA HEALTH AND LIFE INSURANCE
COMPANY *et al.*,

        Defendants.

Civil Action No. 23-22521 (MAS) (TJB)

**MEMORANDUM OPINION**

**<u>SHIPP, District Judge</u>**

    This matter comes before the Court upon Defendant Cigna Health and Life Insurance Company's ("Cigna" or "Defendant") Motion to Dismiss Samra Plastic and Reconstructive Surgery's ("Samra" or "Plaintiff") Complaint. (ECF No. 6.) Plaintiff opposed (ECF No. 12), and Defendant replied (ECF No. 13). After careful consideration of the parties' submissions, the Court decides Defendant's motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons outlined below, Defendant's motion to dismiss is granted in part and denied in part.

**I.    BACKGROUND[1]**

    **A.    Factual Background**

    Samra is a New Jersey based healthcare services provider (Compl. ¶¶ 1, 4, ECF No. 1-1.) Cigna is a corporation headquartered in Bloomfield, Connecticut (*id.* ¶ 2), providing health

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

insurance benefits to individuals, including RM ("Patient"), who was treated by Samra (*id.* ¶¶ 5, 13), a "non-participating or out-of-network provider" of healthcare services (*id.* ¶ 11). Patient, who has a history of breast cancer and other breast-related health issues, previously received breast reconstruction surgery. (*Id.* ¶ 12.) Upon experiencing difficulty healing one of her reconstructed breasts, Dr. Fares Samra, who is "employed and/or contracted by" Samra, evaluated Patient and recommended Patient undergo further breast reconstruction surgeries. (*Id.* ¶¶ 12, 14.) Approximately two weeks prior to Patient's surgeries, Samra, "as part of [its] normal business practice" contacted Cigna to request prior authorization for the planned surgeries. (*Id.* ¶¶ 15.) On February 2, 2023, a Cigna representative, "Angel," approved two Current Procedural Technology ("CPT") codes[2] associated with the planned surgeries and agreed to pay 70% of the charges billed by Samra for the procedures associated with these CPT codes. (*Id.* ¶ 17.)

On either February 16 or February 17, 2023, Samra performed "bilateral partial capsulectomies; bilateral DIEP flap breast reconstructions; bilateral internal mammary lymph node dissection; and TAP block" surgeries on Patient. (*Id.* ¶¶ 13, 19.) Samra sent a bill to Cigna totaling $190,000 for the charges, "represent[ing] the usual and customary charges for the complex procedures performed by a Board-certified Plastic Surgeon performing . . . an exceptionally complex procedure." (*Id.* ¶¶ 21-22.) Cigna is responsible for paying $133,000, or 70% of this total. (*Id.* ¶¶ 17-18, 23.) Cigna has not paid anything to Samra, leaving an unpaid balance of $133,000. (*Id.* ¶ 24.)

---

[2] A CPT code is a "number that identifies and describes the services performed by [a] medical provider in accordance with a systematic listing published by the American Medical Association." *Merling v. Horizon Blue Cross Blue Shield of N.J.*, No. 04-4026, 2009 WL 2382319, at *2 (D.N.J. July 31, 2009).

2

### B. Procedural Background

Samra commenced this action in the Superior Court of New Jersey on October 20, 2023. (*See generally id.*) The Complaint includes seven counts: (1) Breach of Contract ("Count One"); (2) Promissory Estoppel ("Count Two"); (3) Account Stated ("Count Three"); (4) Failure to Make All Payments Pursuant to Member's Plan under 29 U.S.C. § 1132(a)(1)(B) ("Count Four"); (5) Breach of Fiduciary Duty and Co-Fiduciary Duty under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1), and 29 U.S.C. § 1105(a) ("Count Five"); (6) Failure to Establish/Maintain Reasonable Claims Procedures under 29 C.F.R. § 2560.503-1 ("Count Six"); and (7) Failure to Establish a Summary Plan Description in Accordance with 29 U.S.C. § 1022 ("Count Seven"). (*See generally id.*)

On November 20, 2023, Cigna removed this action to federal court, invoking this Court's federal question jurisdiction under 28 U.S.C. § 1331 and its diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1.) Cigna moved to dismiss the Complaint in its entirety on December 22, 2023, pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] (ECF No. 6.) Samra opposed the motion on February 5, 2024 (Pl.'s Opp'n Br., ECF No. 12) and Cigna replied on February 20, 2024 (Def.'s Reply Br., ECF No. 13).

## II. LEGAL STANDARD

Rule 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

---

[3] Unless otherwise noted, all references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III.   DISCUSSION

For the reasons set forth below, Cigna's motion to dismiss is granted in part and denied in part. The Court addresses the Counts in Samra's Complaint pleaded under the Employee Retirement Income Security Act of 1974 ("ERISA") first, before turning to Samra's state law claims.

#### A.   ERISA Claims (Count Four through Count Seven)

Samra maintains that it has derivative standing to assert its ERISA claims in two ways: (1) through an assignment of benefits as alleged in its Complaint (Compl. ¶¶ 46, 48); and (2) through

4

a power-of-attorney as contended in its opposition brief. (Pl.'s Opp'n Br. 16-18). The Court finds, however, that Samra lacks derivative standing to bring claims against Cigna under ERISA and thus Counts Four through Seven are dismissed.

        1.     *Assignment of Benefits*

An anti-assignment clause in Patient's plan prohibits any assignment of Patient's benefits to Plaintiff. Under ERISA, § 502 allows only a plan "participant or beneficiary" to bring a civil action for the recovery of benefits due to them. 29 U.S.C. § 1132(a)(1)(B). An assignment of benefits has, "[u]ntil recently . . . [been an] oft-traveled avenue for" out-of-network healthcare providers to "receive payment directly from insurers . . . and . . . obtain . . . capacity to bring suit for non-payment under [ERISA] § 502. *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 228 (3d Cir. 2020). In response to litigation from healthcare service providers suing on behalf of their patients to recover payment, health insurers began including anti-assignment provisions in their plans, which the Third Circuit upholds as enforceable. *Id.* (citing *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 451 (3d Cir. 2018)). Crucially, here, Patient's plan includes such a provision.[4] (Def's. Moving Br. 14; Patient Plan, ECF No. 7). Given the anti-assignment provision contained in Patient's plan, Samra lacks derivative standing to assert its ERISA claims through an assignment of benefits.

---

[4] The relevant portion of the anti-assignment provision in Patient's plan reads as follows: "You may not assign to any party, including, but not limited to, a provider of healthcare services/items, your right to benefits under this plan, nor may you assign any . . . legal rights or causes of action you may have under ERISA, including but not limited to, any right to make a claim for plan benefits . . . or to file lawsuits under ERISA." (Def.'s Moving Br 14, ECF No. 6-1); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424-25 (3d Cir. 1997) (find that a district court may consider documents extraneous to the pleadings where a given "document [is] integral to or explicitly relied upon in the complaint." (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

        *2.     Power of Attorney*

Plaintiff next attempts to contend that a power of attorney conveyed to it from the Patient establishes derivative standing. (*See* Pl.'s Opp'n Br. 17-18.) While the recent practice of including anti-assignment provisions in patient plans may shield health insurers from liability to healthcare providers, the Third Circuit has "left open the possibility that a patient could grant her provider a valid power of attorney to pursue claims for benefits on her behalf." *Plastic Surgery*, 967 F.3d at 228. This Court, however, has repeatedly dismissed claims for benefits under ERISA § 502 where the plaintiff, alleging to assert claims on behalf of a patient, has failed to adequately plead the statutory requirements of a valid power of attorney. *See, e.g.*, *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, No. 21-9056, 2022 WL 3500416, at *5 (D.N.J. Aug. 18, 2022) (dismissing claims that practitioner asserted as attorney-in-fact for patients where the complaint "fail[ed] to sufficiently allege facts indicating a valid power of attorney"); *Emami v. Aetna Life Ins. Co.*, No. 22-6115, 2023 WL 5370999, at *4 (D.N.J. Aug. 22, 2023) (dismissing complaint where plaintiff failed to "include any further details regarding the [power of attorney] or its execution.").

In the instant case, Samra lacks derivative standing because it failed to allege that it is asserting claims as an attorney-in-fact for Patient, instead alleging that it has standing "based on [an] assignment of benefits." (Compl. ¶ 46.) Plaintiff's attempt to establish derivative standing to assert its § 502 claims in its opposition brief through a power of attorney signed by Patient (Pl.'s Opp'n Br. 17-18) fails, as the existence, much less facts establishing the validity, of a power of

attorney is absent from the Complaint.[5] This Court will not consider factual allegations absent from a party's complaint that are first raised in its opposition brief. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S. 1054 (1984))).

In sum, Samra lacks derivative standing to assert claims on Patient's behalf. The Court, therefore, dismisses Counts Four, Five, and Seven of the Complaint without prejudice, and dismisses Count Six with prejudice.[6]

### B.  ERISA Preemption of State Law Claims

Cigna next argues that Samra's state law claims are preempted by ERISA §§ 502(a) and 514 (*See* Def.'s Moving Br. 5-9.) For the reasons stated below, this Court finds that neither provision preempts Samra's state law claims.

#### 1.  Complete Preemption Under ERISA § 502(a)

Despite the "extraordinary pre-emptive power" of § 502(a), *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004), this Court finds that Samra's state law claims are not preempted by § 502(a). In the Third Circuit, § 502(a) completely preempts a state law claim "only if: (1) the plaintiff could have brought the claim under § 502(a); and (2) no other independent legal duty

---

[5] Since the power of attorney was not alleged to exist in, and was not annexed to, Samra's complaint, this Court does not reach the issue of whether the power of attorney attached to Samra's Opposition brief (Mitchell Aff. Ex. A; ECF No. 12-2) is valid. *See In re Burlington*, 114 F.3d at 1424-25 (finding that a district court should not "go beyond the facts alleged in the [c]omplaint" in ruling on a motion to dismiss).

[6] Count Six is dismissed with prejudice, as the regulation Samra sues under, 29 C.F.R. § 2560.503-1, does not create a private right of action. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985).

supports the plaintiff's claim." *N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014) (citing *Pascack Valley Hosp. Inc. v. Loc. 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004)). The first prong of this test, known as the *Pascack* test, has been "disaggregated . . . into two inquiries: 1(a) Whether the plaintiff is the *type* of party that can bring a claim pursuant to Section 502(a)(1)(B)[;] and 1(b) whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to Section 502(a)(1)(B)." *Progressive Spine & Orthopaedics, LLC v. Anthem Blue Cross Blue Shield*, No. 17-536, 2017 WL 4011203 (D.N.J. Sept. 11, 2017) (cleaned up).

Cigna's contention fails under 1(a), and thus, this Court need not conduct any further analysis. Section 502, ERISA's civil enforcement mechanism, limits claims for benefits to "participant[s] or beneficiar[ies]." 29 U.S.C. § 1132(a)(1)(B). Critically, in the absence of a valid assignment of benefits or power of attorney, as outlined above, Samra cannot bring a claim for benefits under § 502(a) and thus its state law claims are not preempted by § 502(a). *See e.g.*, *E. Coast Adv. Plastic Surgery v. AmeriHealth*, No. 17-8409, 2018 WL 1226104, at *3 (D.N.J. Mar. 9, 2018) (finding that § 502 did not preempt Plaintiff's state law claims "[b]ecause Plaintiff does not have standing to bring a claim under § 502(a)"); *Progressive Spine*, 2017 WL 4011203, at *6 (finding state law claims were not preempted by § 502(a) due to the absence of an assignment of benefits). Accordingly, Cigna's complete preemption argument fails.

    2.  *Express Preemption Under ERISA § 514*

Samra's state law claims are also not expressly preempted by ERISA § 514. To ensure "that ERISA's mandates supplanted the patchwork of state law previously in place . . . Congress enacted section 514(a)—a broad express preemption provision, which 'supersede[s] any and all [s]tate laws insofar as they may now or hereafter relate to any employee benefit plan.'" *Plastic*

8

*Surgery*, 967 F.3d at 226 (second alteration in original) (quoting 29 U.S.C. § 1144(a)). The reach of ERISA's express preemption provision applies not only to state statutes and regulations which relate to an ERISA governed employee benefit plan, but also to state "common law causes of action." *Id.* (citing *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014)). The Supreme Court has recognized that, for the purposes of express preemption, a state law relates to an employee benefit plan, "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).

The Third Circuit's recent decision in *Plastic Surgery* establishes that Samra's claims do not require impermissible reference to Patient's health insurance plan. The Third Circuit has:

> distill[ed] two overlapping categories of claims [requiring impermissible reference to] ERISA plans: (a) claims predicated on the plan or plan administration, e.g., claims for benefits due under a plan . . . or where the plan is a critical factor in establishing liability, and (b) claims that involve construction of [the] plan[ ], or require interpreting the plan's terms.

*Plastic Surgery*, 967 F.3d at 230 (internal quotations omitted) (citations omitted) (fourth and fifth alterations in original). Like the claims at issue in *Plastic Surgery*, Samra's claims:

> arose precisely because there was no coverage under the plans for services performed by an out-of-network provider like [Samra]. . . . Thus, absent a separate agreement between [Cigna] and [Samra], there was no obligation for [Samra] to provide services to the plan participants, no obligation for [Cigna] to pay [Samra] for its services, and no agreement that compensation would be limited to benefits covered under the plan.

*Id.* at 231. Cigna asserts that *Plastic Surgery* is distinguishable because Patient's "benefit plan provides some coverage for out-of-network services, and the precise scope of that coverage must be determined by reference to [Patient's] benefit plan." (Def.'s Reply Br. 9, ECF No. 13.) These facts, however, are not evident on the face of Samra's complaint, which alleges that Cigna agreed to pay 70% of the total billed charges and that the total amount billed "represents the usual and

9

customary charges for" the procedures performed. (Compl. ¶¶ 17, 22.) It is not clear from the Complaint, therefore, that evaluating Samra's claims, if they require any examination of Patient's plan, will involve anything more than "'a cursory examination of the plan' . . . [which] do[es] not entail 'the sort of exacting, tedious, or duplicative inquiry that the preemption doctrine is intended to bar.'"[7] *Plastic Surgery*, 967 F.3d at 234 (quoting *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 85 (3d Cir. 2012)); *see also Premier Orthopaedic Assocs. of S. NJ, LLC v. Anthem Blue Cross Blue Shield*, 675 F. Supp. 3d 487, 492-93 (D.N.J. 2023) (declining to find express preemption of similarly pled breach of contract, promissory estoppel, and account stated claims when "nothing in the [c]omplaint direct[ed] th[e] Court to consider the patient's healthcare benefit plan."); *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, No. 21-11313, 2022 WL 111061, at *6 (D.N.J. Jan. 12, 2022) (finding state law claims were not preempted when "[t]here [was] nothing in the [a]mended [c]omplaint to suggest that [plaintiff] agreed to incorporate the terms of [defendant's] agreements *with patients*[.]").

Patient's plan, furthermore, is not a "critical factor in establishing liability." *Plastic Surgery*, 967 F.3d at 230 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139-40 (1990)). The Complaint alleges that Cigna incurred an independent obligation to pay Samra upon authorizing the CPT codes associated with Patient's surgeries and agreeing to pay 70% of the billed charges. (Compl. ¶¶ 16-18.) Since Samra's claims are predicated on an independent contractual or quasi-contractual duty, and not on Patient's ERISA-governed plan, § 514 does not preempt Samra's state law claims. *See Plastic Surgery*, 967 F.3d at 231; *see also Kindred Hosp. E., LLC v. Loc. 464A United Food & Com. Workers Union Welfare Serv. Benefit Fund*, No.

---

[7] For the same reason, evaluating Samra's state law claims will also not "involve construction of [Patient's] plan[ ], or require interpreting the plan's terms[.]" *Plastic Surgery*, 967 F.3d at 230.

10

21-10659, 2021 WL 4452495, at *8 (D.N.J. Sept. 29, 2021) (collecting cases and explaining that "[t]he Third Circuit, as well as other courts, ha[ve] consistently held that where the predicate of a claim is not an ERISA plan but an independent state-law created duty, Section 514(a) does not preempt the state-law claim."). For the foregoing reasons, this Court declines to find that Samra's state law claims, as alleged, require impermissible reference to Patient's ERISA-governed health insurance plan.[8] As such, Samra's state law claims are not expressly preempted by § 514.

    **C.**    **Samra's State Law Claims (Counts One through Three)[9]**

With preemption off the table, and before evaluating each of Samra's state law claims individually, this Court notes that it rejects Cigna's argument that Samra's state law claims are barred by the Statute of Frauds.[10] On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges*, 404 F.3d at 750 (citing *Kehr Packages*, 926 F.2d at 1409). Cigna does not cite, nor can this Court find, any authority on point to support the

---

[8] Samra's claims also lack a connection with an ERISA plan. "State laws have a 'connection with' ERISA plans if they 'govern, or interfere with the uniformity of, plan administration,' . . . or if the 'acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers[.]'" *Plastic Surgery*, 967 F.3d at 235 (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016)). Because Samra is an out-of-network provider, its state law claims "arise out of a relationship ERISA did not intend to govern" and therefore, do not have an impermissible connection to Patient's ERISA-governed plan. (*Id.* at 237.)

[9] The parties do not dispute that New Jersey law governs Samra's state law claims, and so for the purposes of the present motion, this Court will accept that New Jersey law applies. See *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 591 n.5 (D.N.J. 2016) ("Since [p]laintiffs have made their allegations under New Jersey law and both parties . . . briefed the sufficiency of the claims under New Jersey law, the Court will, for purposes of deciding the present motion to dismiss, apply New Jersey law . . . .").

[10] New Jersey's applicable Statute of Frauds requires that guaranty to pay the debt of another person be in writing to be enforceable. *See* N.J.S.A. § 25:1-15 ("A promise to be liable for the obligation of another person, in order to be enforceable, shall be in a writing signed by the person assuming the liability or by that person's agent. The consideration for the promise need not be stated in the writing.")

11

argument that Samra's state law claims are barred by the applicable Statute of Frauds.[11] Cigna, therefore, fails to satisfy its burden of persuading this Court that N.J.S.A. § 25:1-15 bars these claims.

With the Statute of Frauds inapplicable, the Court turns to Samra's breach of contract, promissory estoppel, and account stated claims.

### 1. Breach of Contract

To properly plead a breach of contract claim under New Jersey law, a plaintiff must allege:

> four elements: [1] that the parties entered into a contract containing certain terms; [2] that plaintiffs did what the contract required them to do; [3] that defendants did not do what the contract required them to do, defined as a breach of the contract; and [4] that defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs.

*Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (internal quotations omitted). Under New Jersey law, a contract requires a manifestation of mutual assent to the same terms. *Kernahan v. Home Warranty Adm'r of Fla., Inc.*, 199 A.3d 766, 777 (N.J. 2019). Here, Plaintiff alleges that a contract was created when Cigna approved the CPT codes associated with Patient's surgeries and agreed to pay 70% of the billed charges associated with those codes. (Compl. ¶¶ 27-28.) Plaintiff further alleges that, after performing the surgery, it "was paid nothing" and "has suffered significant damages as a result of Defendant's failure to pay the agreed upon value for the services." (*Id.* ¶¶ 19, 30-31.) Plaintiff thus alleges the following: (1) Defendant assented to the essential terms of Plaintiff performing surgery on Patient, according to the approved CPT codes,

---

[11] In support of its argument that Samra's state law claims are barred by N.J.S.A. § 25:1-15, Cigna cites *Atlantic Plastic & Hand Surgery, P.A. v. Ralling*, 286 A.3d 1210 (N.J. Super Ct. Law. Div. 2021). (Def.'s Moving Br. 5.) *Atlantic Plastic & Hand Surgery*, however, is distinguishable, as that case concerned whether promises supported by familial bonds were covered by the Statute of Frauds. 286 A.3d at 1215. As such, it does not carry Cigna's burden of persuasion here, in the insurance context.

12

in exchange for Defendant's payment of 70% of the billed amount; (2) Plaintiff performed its duties under the contract; (3) Defendant breached by failing to pay; and (4) Plaintiff has suffered damages in the amount of the unpaid balance.

In cases pleading similar allegations, this Court has dismissed healthcare providers' breach of contract claims only where the claim was premised solely on the preauthorization of medical services, and "the Complaint contains no information on the authorization's terms . . . the type of medical services the authorization covered (whole or part of the patient's treatment), the costs to be covered (all or some), and so on." *Premier Orthopaedic*, 675 F. Supp. 3d at 494. The instant case is distinguishable, however, as Plaintiff alleges that the authorization's terms expressly included that Defendant would be responsible for paying 70% of the billed charges for procedures performed pursuant to two identified CPT codes. (Compl. ¶ 17.) This Court is thus satisfied that Plaintiff has pled "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 668 (quoting *Twombly*, 550 U.S. at 570); *see also Gotham City Orthopedics, LLC*, 2022 WL 111061, at *5 (finding breach of contract claim was adequately pleaded when plaintiff "alleg[ed] that [plaintiff] called [defendant], and [defendant's] representative agreed that [plaintiff] would be reimbursed for the surgeries.").

Cigna's argument that no agreement was formed because the alleged agreement lacked a definite price term (Def.'s Br. at 12) is unpersuasive. "An agreement lacking definiteness of price . . . is not unenforceable if the parties specify a practicable method by which they can determine the amount." *Baer v. Chase*, 392 F.3d 609, 619 (3d Cir. 2004). Samra alleged that the total billed charges "represent the usual and customary charges" for the provided medical services performed by a medical professional within a particular practice. (Compl. ¶ 22.) These allegations are sufficient to survive a motion to dismiss. *See Comprehensive Spine Care*, 2018 WL 6445593, at

\*5 (finding that plaintiff who billed "'normal and reasonable charges' for the provided services according to . . . customary practice . . . [was] entitled to discovery to demonstrate how the parties would have understood or measured the price term in their alleged agreement."); *MedWell, LLC v. Cigna Corp.*, No. 20-10627, 2021 WL 2010582, at \*3 (D.N.J. May 19, 2021) (noting that in similar cases "the majority view, conforming with, if not bound by, New Jersey Supreme Court precedent, reasons that the precise terms of the obligation are factual matters to be fleshed out in discovery."). Samra, therefore, has stated a claim for breach of contract sufficient to survive a motion to dismiss.

### 2.   *Promissory Estoppel*

Under New Jersey law, "[p]romissory estoppel is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Goldfarb*, 245 A.3d at 577. A promise subject to change by the promisor is not sufficiently clear and definite to sustain a claim for promissory estoppel. *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 574 (D.N.J. 2002). Here, Samra alleges that Cigna promised to pay 70% of the reasonable charges for medical services by "providing pre-surgery authorizations to" Samra, and that Samra "relied upon this promise to its detriment by spending . . . time, resources, and energy in providing medical services to the Patient." (Compl. ¶¶ 34-35.)

The Court finds that Cigna's alleged promise is sufficiently definite to state a claim for promissory estoppel because, as this Court has repeatedly found prior, a preauthorization of medical services is a sufficiently clear and definite promise, even absent allegations that particular CPT codes or procedures were approved. *See Comprehensive Spine Care*, 2018 WL 6445593, at \*6; *see also Gotham City Orthopedics*, 2022 WL 111061, at \*6 (collecting cases and explaining

that "[c]ourts have held specifically that a preauthorization can constitute or contain a clear and definite promise.").

Cigna argues that "Samra offers conflicting allegations that demonstrate . . . ambiguity about . . . what Cigna allegedly promised[,]" pointing to the fact that Cigna allegedly promised to pay 70% of the monetary value of the CPT codes, while "Samra alleges facts showing its understanding that Cigna promised . . . payment of 100% of the billed charges." (Def.'s Moving Br. 12.) To the contrary, Samra alleges that Cigna "agreed to pay . . . 70% of the charges billed" and Samra "submitted a bill to . . . Cigna for the . . . total of $190,000." (Compl. ¶¶ 17, 21.) These allegations unambiguously support Samra's claim that it has suffered damages not less than $133,000. (Compl. ¶ 37.) Thus, this Court finds Cigna's argument that Samra failed to properly allege a clear and definite promise without merit.[12] Accordingly, Samra adequately alleges a claim for promissory estoppel.

### 3. Account Stated

Samra's final state law claim rests on "the somewhat arcane [doctrine] known as an account stated." 2 *Corbin on Contracts* § 7.19. This claim is "essentially a species of contract claim." *Accounteks.Net, Inc. v. CKR Law, LLP*, No. A-1067-20, 2023 WL 3331802, at *8 (N.J. App. Div. May 9, 2023). To set forth an account stated claim, the plaintiff needs to adequately allege: (1) "the existence of a debt from a transaction or series of transactions memorialized in such a

---

[12] In preauthorizing the surgeries and representing that it would pay 70% of the charged amount for the surgeries performed by Samra, Cigna had either actual or constructive knowledge that it was reasonable for Cigna to rely on these representations. *See E. Coast Advanced Plastic Surgery v. Aetna, Inc.*, No. 17-13676, 2018 WL 3062907, at *3 (D.N.J. June 21, 2018) (finding that upon pre-authorizing the procedures, health insurer should have understood that it was reasonable for Plaintiff to rely on its representations). It was reasonable, therefore, for Samra to rely on Cigna's authorization and promise to pay 70% of the billed charges for the authorized surgeries. (Compl. ¶ 35.)

15

statement"; (2) express or implied mutual agreement on the correctness of the amount between the parties involved; and (3) "a[n express or implied] promise by the debtor to pay that sum." *Accounteks.Net*, 2023 WL 3331802, at *8 (citing *Adolph Hirsch & Co. v. James C. Malone, Inc.*, 99 N.J.L. 473, 474 (E. & A. 1924)).[13] As for the second element, assent can be implied by "failure to object within a reasonable time." *Id.*

Here, Samra alleges that it sent bills to Cigna "in the sum total of $190,000" (Compl. ¶ 39), and that Cigna has "acknowledged receipt of the bills" (*id.* ¶ 40). Since Samra: (1) has properly alleged the balance owed by Cigna; and (2) Cigna acknowledged, and does not dispute receiving the bill, Samra has properly alleged a claim for account stated. *See Kissner Milling Co. v. Snow Joe, LLC*, No. 22-05903, 2023 WL 8432846, at *4 (D.N.J. Dec. 5, 2023) (noting that "the critical issue is whether [plaintiff] has sufficiently alleged an exact and definite balance" and that a defendant's "receipt of the invoices alone may be enough to support an account stated claim" when defendant did "not deny that it received the invoices."). Moreover, and in the same vein, because Samra properly pled its breach of contract and promissory estoppel claims, it further follows that Samra has also properly alleged a claim for account stated.[14] *E. Coast*, 2018 WL 3062907, at *3;

---

[13] Cigna contends that in the absence of a debtor-creditor relationship, Samra's account stated claim fails. (Def.'s Reply Br. 11 (citing *Premier*, 675 F. Supp. 3d at 492-93).) Cigna extracts this argument from a three-part test this Court previously employed requiring the additional element of previous transactions between the parties. *Bergen Plastic*, 2022 WL 4115701, at *3 (quoting 29 Williston on Contracts § 73:26 (4th ed.)). This test, however, is ultimately rooted in Ohio state law, and therefore, would be an unfaithful application of New Jersey state law. *See id.* This Court therefore must apply the standard described above which has been employed in recent years by New Jersey courts, whose rulings this Court is obliged to follow when considering state law claims.

[14] This Court notes that Samra cannot collect on both its breach of contract and quasi-contractual theories. *See Heyman v. Citimortgage, Inc.*, No. 14-1680, 2019 WL 2642655, at *28 (D.N.J. June 27, 2019) ("An express contract is a bar to [a] promissory estoppel . . . claim[s] under New Jersey law."). "[I]n the alternative pleading is permissible," however, at the motion to dismiss stage. *Prestige Capital Fin. LLC v. CVS Pharmacy, Inc.*, No. 22-735, 2022 WL 17850261, at *6 (D.N.J. Dec. 22, 2022) (citing Fed. R. Civ. P. 8(d)).

*see also Comprehensive Spine Care*, 2018 WL 6445593, at *6 (finding that upon "conclud[ing] that [p]laintiff sufficiently allege[d] breach of an implied contract, the Court likewise finds that [p]laintiff's account stated claim survives [d]efendants' motion to dismiss."); *Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *5 (D.N.J. Jan. 22, 2013) (declining dismissal because account stated claim was "inseparable from [the plaintiff's] breach of contract claim.").

In sum, Samra properly alleges the elements of an account stated claim under New Jersey law, and upon disposing all counterarguments offered by Cigna, this Court denies Cigna's motion to dismiss Samra's account stated claim.

### 4. CONCLUSION

For the reasons discussed in this Memorandum Opinion, Defendant's motion to dismiss is granted in part, and denied in part. Counts Four, Five, and Seven are dismissed without prejudice. Count Six is dismissed with prejudice. Defendant's motion to dismiss Counts One, Two, and Three is denied. The Court will issue an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**